No. 23-60163

# In the United States Court of Appeals for the Fifth Circuit

VANESSA BARRETT, as natural mother and adult next friend of G.W., a minor, who are the heirs and wrongful death beneficiaries of Pierre Woods, deceased; DRIS MITCHELL, as the natural mother and adult next friend of K.W., a minor, who are the heirs and wrongful death beneficiaries of Pierre Woods, deceased,

*Plaintiffs / Appellees*

v.

BRYAN BAILEY, Individually,

*Defendant / Appellant*

Appeal from the United States District Court
for the Southern District of Mississippi, Northern Division
Cause No. 3:21cv124-HTW-LGI

# BRIEF OF APPELLANT

JASON E. DARE (MSB No. 100973)
jdare@bislawyers.com
Biggs, INGRAM & SOLOP, PLLC
Post Office Box 14028
Jackson, Mississippi 39236-4028
Telephone: (601) 987-5307

*Counsel for Bryan Bailey, Individually,
Defendant / Appellant*

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record for Defendant / Appellant certifies that the following listed persons and entities as described in 5TH CIR. R. 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

| | | |
|---|---|---|
| 1. | Vanessa Barrett, as natural mother and adult next friend of G.W., a minor, Dris Mitchell, as the natural mother and adult next friend of K.W., a minor, as heirs and wrongful death beneficiaries of Pierre Woods, deceased | Plaintiffs / Appellees |
| 2. | Sheriff Bryan Bailey | Defendant / Appellant |
| 3. | Zach Acy<br>George Barrentine<br>Chase Beemon<br>Tyson Burleson<br>Christian Dedmon<br>A.J. DiMartino, IV<br>Hunter Elward<br>Justin Evans<br>Cody Grogan<br>Geoff Rauch<br>Luke Stickman<br>Chance White<br>Adam Whittington | Additional Defendants |
| 4. | Tamekia R. Goliday, Esq.<br>GOLIDAY LAW FIRM | Counsel for Plaintiffs / Appellees |
| 5. | Jason E. Dare, Esq.<br>BIGGS, INGRAM & SOLOP, PLLC | Counsel for Defendant / Appellant, and Additional Defendants |

5.     Honorable Henry T. Wingate, United States District Judge

6.     Honorable LaKeysha Greer Isaac, United States Magistrate Judge

**SO CERTIFIED**, this the 6th day of June, 2023.

 */s/  Jason E. Dare*          
**JASON E. DARE**

## STATEMENT REGARDING ORAL ARGUMENT

Defendant / Appellant Sheriff Bryan Bailey submits that pursuant to FED. R. APP. P. 34(a)(2)(B), the dispositive issues herein "have been authoritatively decided" and oral argument in this matter is neither requested nor necessary.

# TABLE OF CONTENTS

Page(s)

CERTIFICATE OF INTERESTED PERSONS ...................................................... i-ii

STATEMENT REGARDING ORAL ARGUMENT ............................................ iii

TABLE OF CONTENTS................................................................................. iv-v

TABLE OF AUTHORITIES .............................................................................. vi-ix

I.  STATEMENT OF JURISDICTION ................................................................ 1-3

   A.  District Court Jurisdiction.............................................................................1

   B.  Jurisdiction of the Court of Appeals .......................................................... 1-3

   C.  Entry Dates .......................................................................................................3

   D.  Assertion ...........................................................................................................3

II.  STATEMENT OF ISSUES.................................................................................3

III. STATEMENT OF THE CASE ......................................................................... 4-11

   A.  Facts Relevant to the Issues Submitted for Review..................................... 4-9

   B.  Relevant Procedural History ....................................................................... 9-11

IV. SUMMARY OF THE ARGUMENT ............................................................ 11-13

V.  ARGUMENT ...................................................................................................... 13-29

    A.  Standard of Review.......................................................................................... 13-15

    B.  Qualified Immunity Standard............................................................................ 15-16

    C.  Whether Sheriff Bailey is entitled to qualified immunity
       from Plaintiffs' bystander liability claim............................................. 16-25

iv

D.  Whether Sheriff Bailey is entitled to qualified immunity
    from Plaintiffs' supervisory liability claim .......................................... 26-28

VI.  CONCLUSION.....................................................................................28

CERTIFICATE OF SERVICE ................................................................29

CERTIFICATE OF COMPLIANCE.......................................................30

# TABLE OF AUTHORITIES

**CASES** <span style="float:right">Page(s)</span>

*Allen v. Hays*,
  65 F.4th 736 (5th Cir. 2023) ........................................................... 19

*Ashcroft v. Iqbal*,
  556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ......................... 26-27

*Ballard v. Burton*,
  444 F.3d 391 (5th Cir. 2006) ...................................................... 17-18

*Batyukova v. Doege*,
  994 F.3d 717 (5th Cir. 2021) ..........................................................19

*Buehler v. Dear*,
  27 F.4th 969 (5th Cir. 2022) ..........................................................14

*Carnaby v. City of Houston*,
  636 F.3d 183 (5th Cir. 2011) ..........................................................27

*Carswell v. Camp*,
  54 F.4th 307 (5th Cir. 2022) ..........................................................14

*Celotex Corp. v. Catrett*,
  477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) ......................... 13-14

*City of Escondido v. Emmons*,
  139 S. Ct. 500, 202 L. Ed. 2d 455 (2019) ............................................ 15-16, 23

*Cole v. Carson*,
  935 F.3d 444 (5th Cir. 2019) ...................................................... 17-19

*Craig v. Martin*,
  49 F.4th 404 (5th Cir. 2022) .......................................................... 27

*Garcia v. Blevins*,
  957 F.3d 596 (5th Cir. 2020) ...................................................... 18-19

*Garza v. Briones,*
    943 F.3d 740 (5th Cir. 2019)  ..................................................... 12, 17, 21-22, 24

*Hale v. Townley,*
    45 F.3d 914 (5th Cir. 1995)  ..................................................................................23

*Johnson ex rel. A.N.E.R. v. City of San Antonio,*
    No. 22-50196, 2023 U.S. App. LEXIS 9448 (5th Cir. Apr. 20, 2023)  ........... 1-2

*Johnson v. Jones,*
    515 U.S. 304, 115 S. Ct. 2151, 132 L. Ed. 2d 238 (1995) ...................................2

*Joseph ex rel. Estate of Joseph v. Bartlett,*
    981 F.3d 319 (5th Cir. 2020)  ...................................................2, 7, 16-17, 23-24

*Keller v. Fleming,*
    952 F.3d 216 (5th Cir. 2020)  ..................................................................... 1-3, 13

*Manis v. Lawson,*
    585 F.3d 839 (5th Cir. 2009)  ..............................................................................19

*McDonald v. McClelland,*
    779 F. App'x 222 (5th Cir. 2019).......................................................................... 24

*Monell v. Dep't of Soc. Servs. of City of New York,*
    436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)  ................................... 26

*Newman v. Guedry,*
    703 F.3d 757 (5th Cir. 2012)  .......................................................................... 27

*Ontiveros v. City of Rosenberg,*
    564 F.3d 379 (5th Cir. 2009)  ..............................................................................19

*Peña v. City of Rio Grande City,*
    879 F.3d 613 (5th Cir. 2018)  .........................................................12-13, 25-26

*Phillips ex rel. Phillips v. Monroe Cnty.,*
    311 F.3d 369 (5th Cir. 2002)  ...................................................................12, 22

*Plumhoff v. Rickard*,
 572 U.S. 765, 134 S. Ct. 2012, 188 L. Ed. 2d 1056 (2014) ...................2, 21, 24

*Pratt v. Harris Cnty.*,
 822 F.3d 174 (5th Cir. 2016) ............................................................. 15

*Ratliff v. Aransas Cnty.*,
 948 F.3d 281 (5th Cir. 2020) ............................................... 12, 17-18

*Rivas-Villegas v. Cortesluna*,
 142 S. Ct. 4, 211 L. Ed. 2d 164 (2021) ................................. 12, 15-16

*Rogers v. Jarrett*,
 63 F.4th 971 (5th Cir. 2023) ...............................................................15

*Scott v. Harris*,
 550 U.S. 372, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007) ................................ 2

*Soto v. Bautista*,
 No. 21-40803, 2023 U.S. App. LEXIS 7160 (5th Cir. Mar. 24, 2023) ...... 12, 25

*Tennessee v. Garner*,
 471 U.S. 1, 105 S. Ct. 1694, 85 L. Ed 2d 1 (1985) ................................ 12, 17-18

*Thompson v. Upshur Cnty.*,
 245 F.3d 447 (5th Cir. 2001) ........................................................ 14-15

*Turtle Island Foods, S.P.C. v. Strain*,
 65 F.4th 211 (5th Cir. 2023) ...........................................................13

*Walsh v. Hodge*,
 975 F.3d 475 (5th Cir. 2020) ............................................................. 1

## **STATUTES**

28 U.S.C. § 1331 .................................................................... 1

28 U.S.C. § 1343 ....................................................................1

42 U.S.C. § 1983 ........................................................... 1, 3, 9, 22-23, 26

MISS. CODE ANN. § 11-7-13 ........................................................................ 22

## **RULES**

FED. R. CIV. P. 12 ......................................................................... 9-11, 26

FED. R. CIV. P. 56 ................................................................. 10-11, 13-14

FED. R. APP. P. 32 ...................................................................... 30

FED. R. APP. P. 34 ........................................................................ iii

5TH CIR. R. 32 ........................................................................... 30

## I.     STATEMENT OF JURISDICTION

### A.     District Court Jurisdiction

The U.S. District Court for the Southern District of Mississippi, Northern Division, (hereinafter "the District Court") has federal question jurisdiction over Plaintiffs' § 1983 claims pursuant to 28 U.S.C. § 1331 and § 1343.

### B.     Jurisdiction of the Court of Appeals

The District Court's denial of qualified immunity to Sheriff Bailey at the summary judgment stage is "immediately appealable to the extent that it turns on an issue of law." *Keller v. Fleming*, 952 F.3d 216, 220 (5th Cir. 2020) (internal quotations and citations omitted). This Court generally "cannot review a district court's conclusions that a genuine issue of fact exists concerning whether a defendant engaged in certain conduct." *Johnson ex rel. A.N.E.R. v. City of San Antonio*, No. 22-50196, 2023 U.S. App. LEXIS 9448, at *14 (5th Cir. Apr. 20, 2023) (quoting *Walsh v. Hodge*, 975 F.3d 475, 481 (5th Cir. 2020)). Instead, appellate jurisdiction exists to "review *de novo* only whether the district court erred in assessing the legal significance of the conduct that it deemed sufficiently supported for purposes of summary judgment." *Keller*, 952 F.3d at 220-21 (internal quotations and citations omitted); *see also Johnson*, 2023 U.S. App. LEXIS 9448, at *14 (Holding that where the district court finds a genuine dispute of material fact, appellate jurisdiction exists "to review the materiality of any

factual disputes, but not their genuineness."). "If assuming the version of the disputed events (most favorably to the plaintiff) still does not give rise to a violation of clearly established law, then reversal is appropriate." *Keller*, 952 F.3d at 221.

The District Court denied qualified immunity to Sheriff Bailey at the summary judgment stage based on the allegations in Plaintiffs' unverified complaint, which was improper. *Joseph ex rel. Estate of Joseph v. Bartlett*, 981 F.3d 319, 334 (5th Cir. 2020) ("A court may not rely on mere factual allegations in an unverified complaint to make summary-judgment rulings."). Even so, "a question of 'evidence sufficiency'" is not reviewable under the collateral order doctrine. *Plumhoff v. Rickard*, 572 U.S. 765, 765, 134 S. Ct. 2012, 2015, 188 L. Ed. 2d 1056 (2014) (quoting *Johnson v. Jones*, 515 U.S. 304, 313, 115 S. Ct. 2151, 2156, 132 L. Ed. 2d 238 (1995)). However, this Court's appellate jurisdiction exists where "the record conclusively disproves" a plaintiff's generalized allegations, *Plumhoff*, 572 U.S. at 776-77,[1] or where a video of the incident clearly disproves a plaintiff's allegations. *Scott v. Harris*, 550 U.S. 372, 378, 127 S. Ct. 1769, 1775, 167 L. Ed. 2d 686 (2007).

---

[1] The plaintiff in *Plumhoff* generally alleged that "the chase … was already over when [the officers] began shooting." 572 U.S. at 777. But the record evidence clearly showed that while the suspect's car came to a temporary stop, the suspect then "resumed maneuvering his car" seconds prior to shots being fired. 572 U.S. at 776. Thus, the record conclusively disprove[d]" the plaintiff's general allegations, which was reviewable under the collateral order doctrine. *Id.* at 777.

Because the record evidence conclusively disproves Plaintiffs' general allegations that their decedent, Pierre Woods ("Woods"), "posed no threat" to the officers who used deadly force, ROA.1262, this Court possesses appellate jurisdiction to review the District Court's decision. Moreover, because the actions attributable to Sheriff Bailey in the District Court's order "do[ ] not give rise to a violation of clearly established law," *Keller*, 952 F.3d at 221, this Court has jurisdiction to review the District Court's denial of qualified immunity.

### C.    Entry Dates

The District Court's order denying qualified immunity to Sheriff Bailey was entered on March 17, 2023. ROA.1257-69. Sheriff Bailey filed his Notice of Appeal on April 3, 2023. ROA.1270-71.

### D.    Assertion

This appeal is brought to finally resolve all claims asserted against Sheriff Bailey, in his individual capacity, as he is entitled to qualified immunity from liability in Plaintiffs' suit brought pursuant to 42 U.S.C. § 1983.

## II.    STATEMENT OF THE ISSUES

A.    Whether Sheriff Bailey is entitled to qualified immunity from Plaintiffs' bystander liability claim.

B.    Whether Sheriff Bailey is entitled to qualified immunity from Plaintiffs' supervisory liability claim.

## III.    STATEMENT OF THE CASE

### A.    Facts Relevant to the Issues Submitted for Review

Woods was staying with his cousin at 104 Dillard Avenue in Pelahatchie, Rankin County, Mississippi, when on the morning of February 18, 2019, he began firing a pistol from the residence at "everyone / anyone." ROA.331, 1261. A "shots fired" call was made to the Pelahatchie Police Department, and its police chief, Joseph Daughtry, was dispatched to investigate. ROA.338:6-14. Chief Daughtry heard two gunshots from inside the residence the moment his "foot touched the ground," ROA.338:16-17, 339:9-11, and he called for assistance from the Rankin County Sheriff's Department. ROA.339:16-18.

Thereafter, according to the District Court's *Statement of Facts*:

[W]hen Rankin County dispatch received a call for assistance with an active shooter, the information was relayed to Sheriff Bailey. According to Sheriff Bailey, he activated the Rankin County Special Response Team ("Rankin SRT")[9] to the scene, and then personally drove to the residence. The SRT Team included Defendants Rankin County Deputies, named above. Sheriff Bailey was solely responsible for supervising the SRT team.

[9] The SRT team is a special response team comprised of Rankin County deputies who are selected to receive tactical operations training and develop a level of proficiency in the use of specialized equipment and firearms.

Defendants state that when they arrived on the scene, Woods was inside the home alone and appeared disoriented, mentally challenged and possibly intoxicated. Sheriff Bailey contends that he, along with other officers and the Rankin County hostage negotiator, attempted to negotiate with Woods, urging Woods to relinquish his weapon and

> exit the house peacefully. These negotiation attempts allegedly lasted
> over an hour. Despite Defendants' repeated requests, Woods initially
> refused to come out of the residence.

ROA.1261. Omitted from the foregoing facts but legally significant to the qualified immunity issues are the uncontested facts that in response to negotiation attempts by Rankin SRT, Woods "kept yelling stuff like 'We're all going to die today.' He stuck his arm out of the door with the gun in his hand and waved it around," ROA.340:16-19, "in a circular motion, pointing it at all directions." ROA.341:11-12. Woods then closed the door and twice fired his pistol from inside the residence. ROA.341:18-23. Sheriff Bailey attempted to communicate with Woods over a speaker / "P.A." system, identifying himself and telling Woods, "Nobody is going to hurt you; … I want you to come on out." ROA.343:4-7. Woods responded by stating, "F**k y'all. We are all going to die today." ROA.343:8-10. Woods' family members, including his brother, pleaded with him over the speakers in further negotiation attempts, but Woods responded with "F**k you, f**k the police; you are going to die with them." ROA.343:20-22.

"The Rankin SRT then placed a mobile robot with video feedback into the house to determine Woods' physical location within the residence." ROA.1261. They determined that Woods was located in the northwest corner bedroom of the residence behind a closed door. ROA.379:14-20. Woods then fired multiple shots believed to be in the direction of the mobile robot. ROA.856.

"[A]fter all negotiation tactics had failed, and for protection of the officers and bystanders around the residence, the Rankin SRT fired multiple oleoresin capsicum gas (tear gas) canisters into the home." ROA.379:18-380:21, 1262. At or around this time, Rankin SRT members Zach Acy, Chase Beemon, Hunter Elward, Luke Stickman, and Adam Whittington were positioned behind a gold Mazda SUV that was parked parallel to the residence and a few feet away from the open front door. ROA.857-61. Behind them was a tan Rankin County Mine Resistant Ambush Protected ("MRAP") vehicle, which was facing the opposite direction and was further north of the gold Mazda SUV. ROA.857-58, 860-61. Other Rankin SRT members Tyson Burleson, A.J. DiMartino, Justin Evans, Cody Grogan, and Geoff Rauch were positioned towards the front, driver's side of the MRAP. ROA.866-67. The Rankin SRT members behind the MRAP could see the northwest bedroom windows of the residence where Woods was located, but their view of the front door was obstructed by the MRAP. ROA.866-67.

After tear gas was released in the house, "Woods fired three shots from the bedroom, which can be heard at 0:00:01 through 0:00:02 of the Video," ROA.1262, and these "three shots … were aimed at the Rankin SRT" members behind the MRAP.[2] ROA.1263. Being focused on the bedroom window that

---

[2] ROA.864 (Burleson - "I could then see the suspect shoot at [the deputies behind the MRAP and he] continued to aim his weapon at [us]."); ROA.869 (Grogan - "[T]he male fired a round towards myself and other SRT members out of the bedroom window where he was seen

Woods was actively firing from, the Rankin SRT members behind the MRAP returned fire towards the northwest bedroom window.[3]

The front door to the residence remained open from when the mobile robot had been placed inside the residence, ROA.856, and Woods ran out of the bedroom and toward the front door with a pistol in hand. ROA.269. He was running towards the Rankin SRT members behind the gold Mazda SUV.[4] Acy fired one non-lethal "impact round at the suspect," which was unsuccessful at stopping the charge. ROA.856. The remaining Rankin SRT members behind the gold Mazda SUV then used deadly force on Woods as he ran towards the front door with pistol in hand. ROA.856.

Based purely on the allegations in Plaintiffs' unverified First Amended Complaint,[5] the District Court found that "[t]he parties present inconsistent accounts of what transpired" at the front door. ROA.1262. Per the District Court:

Plaintiffs' Amended Complaint states:

---

standing."); ROA.880 (Evans - "… I saw the round strike the street just in-front of my position."); ROA.881 (Rauch - "[Woods] shot out of the window striking the ground near where other SRT members and myself were standing.").

[3] ROA.864-65, 868, 877-78, 880-81.

[4] ROA.856 (Acy - "[T]he suspect … appeared in the living room with a black pistol in his hand and started pointing the pistol at officers that were on the car."); ROA.882 (Stickman - "I then saw the suspect running through the house, toward our direction with a handgun in his hand."); ROA.883 (Whittington - "[T]he subject became visible through the front door of the home as he ran toward myself and other team members with a black handgun raised in our direction.").

[5] Sheriff Bailey maintains and does not waive any argument that the District Court's reliance on Plaintiffs' unverified complaint to create a fact issue was improper. *Estate of Joseph*, 981 F.3d at 334.

While physically disoriented and visually impaired from the tear gas, Woods began to run toward the front door of his home with his hands extended above his head. Although Woods had a pistol in one of his hands, both his hands were extended above his head as he approached the front door. Once he reached the front door of his home, Woods immediately threw the pistol to the ground and it landed in the area where Deputy Hunter Elward and Deputy Zach Acy were positioned.

Upon [Woods'] exit from the home, Defendants, without warning, began firing their weapons at Woods. [Woods] immediately fell to the ground and even after he fell to the ground, the Defendants continued to fire their weapons at Woods, which left both his body and home riddled with bullet fragments…

[Docket no. 45 at ¶ 23].

Plaintiffs allege that after Woods tossed his weapon to the ground and crossed the threshold of the front door, he posed no threat to the Defendants. Defendants, however, paint a different picture. The Rankin [SRT members] stated that they saw Woods pointing his gun at the officers. Defendants claim that they responded with deadly force because they perceived a legitimate threat from Woods.

ROA.1263.

As to the actions of Sheriff Bailey during the use of deadly force, the District

Court found as follows:

Sheriff Bailey states that he heard the gunshots, and when he heard the officers "return fire", he was situated behind the [MRAP]. [ROA.382-83]. Sheriff Bailey claims he did not instruct the Rankin SRT to start shooting [ROA.383:12-14], nor did he see the shooting. [ROA.383:4-6]. Furthermore, claims Sheriff Bailey, he never fired a shot. [ROA.388]. Finally, says, Sheriff Bailey, as soon as he was able to obtain a visual of Woods and see that Woods was on the ground, yelled, "Cease fire, cease fire." [ROA.384]. Other officers then allegedly repeated this phrase out loud. The parties agree that the shooting stopped after Sheriff Bailey yelled "Cease fire!".

ROA.1263. Sheriff Bailey did not know how long Woods was on the ground before he visualized the suspect and yelled "cease fire." ROA.384:10-15.

Based solely on the allegations in the First Amended Complaint, the District Court found that Sheriff Bailey was not entitled to qualified immunity because "he was present at the scene; he was actively involved in the negotiations; and he played an important role in use of the alleged excessive force which led to Woods' death." ROA.1264.

### B.    Relevant Procedural History

Plaintiffs Vanessa Barnett and Dris Mitchell (collectively "Plaintiffs") "are the two natural mothers of G.W. and K.W.," who are the "two surviving minor children" and "alleged sole heirs and wrongful death beneficiaries" of Woods. ROA.1258-59. On behalf of their minor children, Plaintiffs filed suit on February 17, 2021 against the City of Pelahatchie, Chief Daughtry, Rankin County, and Sheriff Bailey. ROA.18-30. They assert § 1983 claims for the alleged violation of Woods' Fourth Amendment rights resulting from the use of deadly force by Rankin SRT members on February 18, 2019. ROA.22-23.

Sheriff Bailey filed his Answer and a qualified immunity motion under Rule 12(c) on April 20, 2021. ROA.54-76. After Plaintiffs failed to respond to Sheriff Bailey's qualified immunity motion by October 18, 2021, the District Court entered a show cause order directing a response on or before October 28, 2021.

ROA.120. On this deadline, Plaintiffs moved to take qualified immunity related

discovery and to amend their Complaint. ROA.139-143. In granting Plaintiffs'

motion, the District Court held in pertinent part as follows:

> **IT IS FURTHER ORDERED** that the parties are to conduct ninety
> (90) days of qualified immunity related discovery as set forth below:
>
> Discovery sufficient to enable this court to determine (including the
> deposition of Chief Daughtry and Sheriff Bailey, if necessary) the
> extent of Chief Daughtry's and Sheriff Bailey's respective roles with
> regard to the February 18, 2019, incident, specifically: (a) whether
> Chief Daughtry and Sheriff Bailey were present at the scene; (b)
> whether Woods exited his home with a weapon in his hand; (c) what
> directions, if any, were given by Chief Daughtry or Sheriff Bailey to
> the other law enforcement officers present; (d) what directions, if any,
> were given by Chief Daughtry or Sheriff Bailey to Woods.
>
> Discovery sufficient to ascertain the identities and roles of all law
> enforcement officers present at the scene; and
>
> Discovery sufficient to ascertain the identities of other parties present
> at the scene, including the publisher of the video footage, allegedly
> depicting Woods' death.

ROA.251-52.

Following the expiration of this discovery period, Plaintiffs filed their First

Amended Complaint on July 7, 2022, ROA.260-294, and allege bystander liability

and/or supervisory liability claims against Sheriff Bailey. ROA.285-86. They also

added 13 Rankin SRT members as named Defendants. ROA.260. Sheriff Bailey

renewed his qualified immunity motion pursuant to Rule 12(c) motion, or

alternatively, Rule 56 on July 18, 2022. ROA.326-427. The 13 Rankin SRT

members moved for qualified immunity pursuant to Rule 12(c), or alternatively, Rule 56 on November 18, 2022. ROA.851-97.

Sheriff Bailey's qualified immunity motion was analyzed under Rule 56 standards and denied by the District Court on March 17, 2023. *See* ROA.1267. This decision was timely appealed. ROA.1270-71. The qualified immunity motion filed by the 13 Rankin SRT members has been fully briefed and remains pending before the District Court. ROA.904-1141, 1179-94. The claims against the City of Pelahatchie, Chief Daughtry, and Rankin County have been dismissed, as have the official capacity claims. ROA.1213-14, 1257-58. Thus, the remaining claims in this litigation are those against Sheriff Bailey at issue on appeal and those against the 13 Rankin SRT members, which are still before the District Court.

## IV.    SUMMARY OF THE ARGUMENT

The District Court erred as a matter of law by denying qualified immunity to Sheriff Bailey at the summary judgment stage. As to the bystander liability claim, Plaintiffs failed to create a triable issue as to whether Rankin SRT members violated Woods' Fourth Amendment rights by using deadly force. It is uncontested that Woods (1) possessed at least one firearm, (2) repeatedly threatened to kill officers and bystanders on scene, (3) refused multiple requests to disarm and exit the house peacefully, (4) fired multiple shots within the residence, with the last three being aimed at the officers, then (5) ran towards the open front door of the

house with a pistol in hand. The use of deadly force under such circumstances does not violate Fourth Amendment standards. *Ratliff v. Aransas Cnty.*, 948 F.3d 281, 288 (5th Cir. 2020). And the continued use of deadly force for seven seconds after Woods fell to the ground was reasonable since the officers were not able to confirm that the threat ended prior to that time. *Garza v. Briones*, 943 F.3d 740, 748 (5th Cir. 2019). Moreover, Plaintiffs failed to plead or present summary judgment evidence that any shots fired after Woods fell to the ground caused his death. *Phillips ex rel. Phillips v. Monroe Cnty.*, 311 F.3d 369, 374 (5th Cir. 2002).

Further, it is uncontested that Sheriff Bailey was behind the MRAP and did not personally witness any of the initial shooting, thus did not possess a reasonable opportunity to prevent the initial shooting. *Soto v. Bautista*, No. 21-40803, 2023 U.S. App. LEXIS 7160, at *15-16 (5th Cir. Mar. 24, 2023). Once he was able to visualize Woods on the ground, he took reasonable measures to stop the shooting by ordering a cease fire. *Peña v. City of Rio Grande City*, 879 F.3d 613, 621 (5th Cir. 2018). Finally, no clearly established precedent provided Sheriff Bailey and/or the Rankin SRT members with notice that their actions would violate Woods' Fourth Amendment rights. *Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4, 7-8, 211 L. Ed. 2d 164 (2021). Sheriff Bailey is entitled to qualified immunity on the bystander liability claim and respectfully requests that this Court reverse the District Court's order denying his motion for summary judgment and render judgment in his favor.

Plaintiffs did not argue any unconstitutional policies maintained by Sheriff Bailey with deliberate indifference in support of their supervisory liability claim. Instead, they allege that Sheriff Bailey "was present at the scene; he was actively involved in the negotiations; and he played an important role in use of the alleged excessive force which led to Woods' death." ROA.1264. But it is uncontested that Sheriff Bailey did not fire a shot or order any Rankin SRT member to fire a shot, and thus, none of Sheriff Bailey's conduct violated clearly established statutory or constitutional rights of Woods. *Peña*, 879 F.3d at 620-21. For these reasons, the District Court's denial of qualified immunity to Sheriff Bailey on Plaintiffs' supervisory liability claims should be reversed and rendered.

## V.    ARGUMENT

### A.    Standard of Review

This Court reviews "a grant (or denial) of summary judgment de novo." *Turtle Island Foods, S.P.C. v. Strain*, 65 F.4th 211, 215 (5th Cir. 2023) (citation omitted). Moreover, the Court's "review [of] the district court's resolution of [the] legal issues [of qualified immunity] - the scope of clearly established law and the objective reasonableness of the defendant government officials' actions – [is] *de novo*." *Keller*, 952 F.3d at 221 (citations omitted).

"[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who

fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). Per its order, ROA.241-52, the District Court allowed "discovery limited to the factual disputes relevant to whether QI applies, then [Sheriff Bailey] reassert[ed] QI in a summary judgment motion." *Carswell v. Camp*, 54 F.4th 307, 312 (5th Cir. 2022) (citation omitted). Accordingly, the District Court properly analyzed Sheriff Bailey's qualified immunity defense under summary judgment standards. *Id.*

"To deny qualified immunity at the summary judgment stage, a district court must answer 'yes' to *two* questions[:]" (1) does "the alleged conduct amount[ ] to a constitutional violation," and (2) was "the right … clearly established at the time of the conduct." *Buehler v. Dear*, 27 F.4th 969, 980 n.13 (5th Cir. 2022) (internal quotations and citations omitted, emphasis in original). Also, the district court's order should "explain[ ] what facts the plaintiff may be able to prove at trial, i.e. what particular facts the court assumed in denying summary judgment urged on the basis of qualified immunity." *Thompson v. Upshur Cnty.*, 245 F.3d 447, 456 (5th Cir. 2001). When the district court "instead, denies the motion simply because 'fact issues' remain, this Court" can either "scour the record and determine what facts

the plaintiff may be able to prove at trial and proceed to resolve the legal issues, or remand so that the trial court can clarify the order." *Id.* (citations omitted).

### B.    Qualified Immunity Standard

Qualified immunity protects Sheriff Bailey when his "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Rivas-Villegas*, 142 S. Ct. at 7 (citation omitted). Upon Sheriff Bailey asserting his qualified immunity defense, the burden shifts to Plaintiffs to "demonstrate the inapplicability of the defense." *Rogers v. Jarrett*, 63 F.4th 971, 975 (5th Cir. 2023) (citation omitted). This burden-shifting requires that Plaintiffs "(1) raise a fact dispute on whether [Woods'] constitutional rights were violated by [Sheriff Bailey's] individual conduct, and (2) show those rights were 'clearly established at the time of the violation.'" *Id.* (citation omitted). These elements need not be analyzed in any particular order and courts "need not proceed to the second [element] where the first is resolved in the negative." *Pratt v. Harris Cnty.*, 822 F.3d 174, 181 (5th Cir. 2016) (citation omitted).

To be "clearly established", a right must be "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Rivas-Villegas*, 142 S. Ct. at 7 (citation omitted). The Supreme Court has repeatedly emphasized that "the clearly established right must be defined with specificity" and not defined "at a high level of generality." *City of Escondido v.*

*Emmons*, 139 S. Ct. 500, 503, 202 L. Ed. 2d 455 (2019) (citation omitted); *see also Rivas-Villegas*, 142 S. Ct. at 8 ("This inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'"). The "clearly established" component is "particularly important in excessive force cases, … where … it is sometimes difficult for an officer to determine how the relevant legal doctrine … will apply to the factual situation the officer confronts." *Emmons*, 139 S. Ct. at 503 (citation omitted); *see also Rivas-Villegas*, 142 S. Ct. at 8. "Use of excessive force is an area of the law in which the result depends very much on the facts of each case, and thus police officers are entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue." *Emmons*, 139 S. Ct. at 503 (citation omitted). And Plaintiffs bear the burden of "identify[ing] a case that put [Sheriff Bailey] on notice that his specific conduct was unlawful." *Rivas-Villegas*, 142 S. Ct. at 8.

**C.    Whether Sheriff Bailey is entitled to qualified immunity from Plaintiffs' bystander liability claim**

Bystander liability exists where an officer "(1) knew a fellow officer was violating an individual's constitutional rights, (2) was present at the scene of the constitutional violation, (3) had a reasonable opportunity to prevent the harm but nevertheless, (4) chose not to act." *Estate of Joseph*, 981 F.3d at 343. In other words, a plaintiff must prove a constitutional violation plus "acquiesce[nce] in the

alleged constitutional violation" by a fellow officer who could have intervened. *Id.* (citation omitted). "[M]ere presence in the vicinity of the violation" will not suffice. *Id.*

> i.     Whether Sheriff Bailey knew a Rankin SRT member was
>        violating Woods' constitutional rights

This element of bystander liability requires two considerations: (1) whether a Rankin SRT member violated Woods' Fourth Amendment rights and (2) whether Sheriff Bailey had knowledge of such violation. The majority of the District Court's focus is on the first of these two considerations and is based on its incorrect holding that "a Fourth Amendment violation occurs when an officer shoots an individual holding a gun when the gun was not aimed at the officer." ROA.1267 (citing *Tennessee v. Garner*, 471 U.S. 1, 11, 105 S. Ct. 1694, 85 L. Ed 2d 1 (1985); *Cole v. Carson*, 935 F.3d 444 (5th Cir. 2019)).

Fifth Circuit precedent "clearly establishe[s] that deadly force is not unreasonable when an armed suspect has ignored multiple orders to disarm and has either pointed his weapon at a person or used the weapon in such a manner as to make a threatening gesture." *Ratliff*, 948 F.3d at 288 (citing *Garza*, 943 F.3d at 747) (Holding that "[a] reasonable officer in any of the defendants' shoes would have believed that Garza posed a serious threat ***regardless of the direction that Garza was pointing his gun*** just before he was shot.") (emphasis added); *Ballard*

*v. Burton*, 444 F.3d 391, 402-03 (5th Cir. 2006) ("deadly force was not unreasonable when a suspect had 'refused to put down his rifle, discharged the rifle into the air several times while near the officers, and pointed it in the general direction of [the] officers,' even though the suspect was not pointing his gun at anyone when he was shot.") (emphasis added) (additional citations omitted).

The direction Woods pointed his gun at the moment deadly force was used is immaterial to whether the use of deadly force "was unreasonable and excessive when the facts are viewed 'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" *Ratliff*, 948 F.3d at 287-88 (citation omitted).[6] And neither *Tennessee v. Garner* nor *Cole v. Carson* clearly establish Fourth Amendment law to the contrary. In *Garner*, officers shot an unarmed man from behind as he climbed a fence while fleeing. *Garner*, 471 U.S. at 4. In *Cole*, the Fifth Circuit held "that it violated clearly established law in 2010 for police to shoot someone who - though pointing a gun at his own head - made no threatening movements toward the officers, was facing away from the officers, was not warned by the officers even though there was opportunity to do so, and

---

[6]  "[P]olice officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving - about the amount of force that is necessary in a particular situation." [citation omitted]. For that reason, we judge the reasonableness of the force used "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," … and we avoid "second-guessing a police officer's assessment, made on the scene, of the danger presented by a particular situation." [citations omitted].

*Garcia v. Blevins*, 957 F.3d 596, 602 (5th Cir. 2020).

may have been unaware of the officers' presence." *Garcia*, 957 F.3d at 601 (citing *Cole*, 935 F.3d at 454-55).

"[O]ther factors that led the officer to suspect that the victim would resort to violence" should be considered in analyzing the reasonableness of deadly force. *Allen v. Hays*, 65 F.4th 736, 745 (5th Cir. 2023) (citing *Batyukova v. Doege*, 994 F.3d 717, 722-23 (5th Cir. 2021) ("suspect refused to comply with demands, gave officers the middle finger, and yelled 'f**k you,' 'f**k America,' and, allegedly, 'you're going to f**king die tonight'); *Manis v. Lawson*, 585 F.3d 839, 842 (5th Cir. 2009) ("suspect ignored officers' orders and 'began shouting obscenities and flailing his arms aggressively at them'"); *Ontiveros v. City of Rosenberg*, 564 F.3d 379, 381 (5th Cir. 2009) ("police officers were warned that suspects were 'high risk because [they] had been involved in a violent altercation earlier in the day, may have been drinking, possessed and threatened to use a pistol and a rifle, and were believed capable of using the weapons'")).

In this case, it is uncontested that Woods knew of the officers' presence and shouted several times that he would kill them. ROA.340-41. It is also uncontested that Woods fired his pistol several times while inside the house, ROA.341, 856, after which non-lethal tear gas was deployed into the house. ROA.1262. Woods then fired his pistol three times at Rankin SRT members located behind the MRAP, ROA.864, 869, 880-81, 1262-63, and immediately ran towards the Rankin

SRT members behind the gold Mazda SUV with a pistol in his hand. ROA.269, 856, 876, 879, 882-83, 1262-63. Even at this point, Rankin SRT members still tried using non-lethal force (*i.e.*, the impact round) before resorting to deadly force. ROA.856.

Plaintiffs allege that "[o]nce he reached the front door of his home, Woods immediately threw the pistol to the ground and it landed in the area where … Elward and … Acy were positioned." ROA.1262. Then they allege that "[u]pon [Woods'] exit from the home, Defendants, without warning, began firing their weapons at Woods." ROA.1262. But the video[7] of the incident clearly shows that the use of deadly force started *before* Woods exited the front door. And issues such as whether Woods was pointing a pistol at officers or was in the process of throwing a weapon, or whether Woods' hands were above his head or by his side, are immaterial to whether the use of deadly force was reasonable at the moment it was used. It is uncontested that Woods (1) possessed at least one firearm, (2) repeatedly threatened to kill officers and bystanders on scene, (3) refused multiple requests to disarm and exit the house peacefully, (4) fired multiple shots within the residence, with the last three being aimed at the officers, then (5) ran towards the open front door of the house with a pistol in hand. The undersigned counsel is unaware of any decision holding that the use of deadly force under such tense and

---

[7] *See Notice of Conventional Filing*, ROA.219-20.

rapidly evolving circumstances violates Fourth Amendment standards. Accordingly, the District Court erred as a matter of law in holding that a triable issue exists as to whether Woods' Fourth Amendment rights were violated by the initial use of deadly force.

The Court also found that "the Video shows that once Woods was shot, he immediately fell to the ground and did not move. The officers continued to shoot for at least seven (7) more seconds after Woods hit the ground." ROA.1268. According to Fourth Amendment standards, "if police officers are justified in firing at a suspect in order to end a severe threat to public safety, the officers need not stop shooting until the threat has ended." *Plumhoff*, 572 U.S. at 777. The shooting here lasted for a total of seven seconds,[8] with Rankin SRT members behind the gold Mazda SUV firing at Woods and those behind the MRAP firing at the bedroom window where they believed Woods was located. ROA.856, 864-65. Based on the video of the incident and their statements, the officers behind the gold Mazda SUV could see Woods exit the house. But their view of Woods' actions once he was on the ground was obstructed by the SUV. These officers also heard shooting from behind the MRAP and towards the house, and could reasonably believe that a threat remained. *See Garza*, 943 F.3d at 748 (citations omitted) (Holding that misperceiving a fellow officer's shot as coming from the suspect is

---

[8] Less than the "sixty-one shots in eight seconds" held reasonable in *Garza*, 943 F.3d at 748, and the 10 seconds of shooting held reasonable in *Plumhoff*, 572 U.S. at 777.

not unreasonable since "the law does not require officers in a tense and dangerous situation to wait until the moment a suspect uses a deadly weapon to act to stop the suspect.") Accordingly, the shots fired once Woods went to the ground were not unreasonable and/or a violation of Woods' Fourth Amendment rights.

Further, there is no allegation and/or summary judgment evidence showing that shots fired after Woods fell to the ground caused his death. Plaintiffs allege that "[Woods] immediately fell to the ground and even after he fell to the ground, the Defendants continued to fire their weapons at Woods, which left both his body and home riddled with bullet fragments." ROA.1262. Since Plaintiffs' claims are brought pursuant to Mississippi's wrongful death statute, Miss. Code Ann. § 11-7-13, they "must prove both the alleged constitutional deprivation required by § 1983 and the causal link between the defendant's unconstitutional acts or omissions and the death of the victim, as required by [Mississippi's] wrongful death statute." *Phillips*, 311 F.3d at 374. There is no summary judgment evidence that any of the shots fired after Woods "hit the ground" actually struck Woods and/or whether Woods died as a result of the initial use of deadly force or the shots fired after he "hit the ground." Since Plaintiffs bear the burden of proving this element of their claim at trial, lack of such evidence at the summary judgment stage is dispositive.

Even if a Fourth Amendment violation occurred, there is no finding or evidence that Sheriff Bailey had the requisite knowledge to support a bystander

liability claim. The District Court found that Sheriff Bailey "heard the gunshots" while "situated" behind the MRAP. ROA.1263. But Sheriff Baily "did not instruct the Rankin SRT to start shooting, nor did he see the shooting." ROA.1263. "[A]s soon as [Sheriff Bailey] was able to obtain a visual of Woods and see that Woods was on the ground, [he] yelled, "Cease fire, cease fire." ROA.1263. Plaintiffs did not produce any summary judgment evidence to the contrary but, instead, allege in their First Amended Complaint that:

> Bailey gave the defendant officers authority to shoot Woods, positioned himself where he could no longer see Woods, and allowed the officers to continue to shoot Woods after he fell to the ground and clearly was no longer a threat before he issued the command to "*Cease Fire*."

ROA.1263.

The District Court held that "[e]xcessive force jurisprudence … dictates that 'an officer who is present at the scene and does not take reasonable measures to protect a suspect from another officer's use of excessive force may be liable under Section 1983." ROA.1267 (quoting *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995)). But *Hale* defines bystander liability law at an extremely "high level of generality." *Emmons*, 139 S. Ct. at 503.

Bystander liability requires that an officer possess actual knowledge that a fellow officer is violating someone's constitutional rights. *Estate of Joseph*, 981 F.3d at 343. In excessive force cases, this typically requires that the bystander

officer visualize the other officer's actions. *See id.* at 344-45; *see also McDonald v. McClelland*, 779 F. App'x 222, 227 (5th Cir. 2019) ("[T]he uncontroverted evidence is that none of the defendant officers saw any other officer kick McDonald.").

Due to his position behind the MRAP, Sheriff Bailey did not visualize Woods' last three shots at officers and/or their return of gunfire. ROA.1263. And no clearly established bystander liability law requires an officer to put himself in harms-way during an active shooter event in order to ascertain the actions of other officers. Thus, the mere fact that Sheriff Bailey "positioned himself where he could no longer see Woods," even if true, is of no consequence. ROA.1263. The fact that Sheriff Bailey heard the shooting is also immaterial as the shooting lasted for approximately seven seconds, ROA.1268, and the number of shots, "standing alone, does not render [the] use of force objectively unreasonable." *Garza*, 943 F.3d at 748 (citing *Plumhoff*, 572 U.S. at 777).

For all of the foregoing reasons, neither the Rankin SRT members nor Sheriff Bailey violated clearly established Fourth Amendment law on February 18, 2019, and Sheriff Bailey is entitled to qualified immunity from Plaintiffs' bystander liability claim.

      ii.    <u>Whether Sheriff Bailey had a reasonable opportunity to prevent the harm but nevertheless, chose not to act</u>.

It is uncontested that Sheriff Bailey was behind the MRAP when shooting started and could not visualize Woods. ROA.1263. Thus, even assuming that the use of deadly force was excessive, it would be impossible for Sheriff Bailey to react quickly enough to stop the initial shots. *See Soto*, 2023 U.S. App. LEXIS 7160, at *15-16. Once Sheriff Bailey could see Woods, he took reasonable measures to stop the force by ordering a cease fire. *See Peña*, 879 F.3d at 621 (Even though supervisor gave order to use taser, no bystander liability existed since he ordered officers to "shut off the taser" upon seeing the suspect "shaking" from electrical current, thus taking "reasonable measures" to stop the force).

All shooting in this case lasted mere seconds. Photographic evidence of the scene shows that Sheriff Bailey's view of the front door and the area where Woods fell was obstructed by the MRAP and the gold Mazda SUV. ROA.857, 861. While shooting was ongoing, Sheriff Bailey had to change his position to visualize Woods. And as soon as Sheriff Bailey had a reasonable opportunity to visualize Woods, he yelled "cease fire." There is no finding by the District Court, no summary judgment evidence, and no allegation that Sheriff Bailey acquiesced in the shooting. Moreover, no clearly established law required Sheriff Bailey to take a different course of action during this active shooter event. For these reasons, he is entitled to qualified immunity from all bystander liability claims against him and the denial of his motion for summary judgment should be reversed and rendered.

**D.    Whether Sheriff Bailey is entitled to qualified immunity from Plaintiffs' supervisory liability claim**

No § 1983 liability exists under theories of *respondeat superior* and/or vicarious liability. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691, 98 S. Ct. 2018, 2036, 56 L. Ed. 2d 611 (1978). Accordingly, "the term 'supervisory liability' is a misnomer," as "each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 677, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). In order for Sheriff Bailey to be liable under a theory of supervisory liability, Plaintiffs have the burden of proving he either "(1) "… affirmatively participate[d] in the acts that cause the constitutional deprivation, or (2) implement[ed] unconstitutional policies that causally result in the constitutional injury." *Peña*, 879 F.3d at 620 (citation omitted). Plaintiffs also bear the burden of showing that Sheriff Bailey "act[ed], or fail[ed] to act, with *deliberate indifference* to violations of others' constitutional rights committed by [his] subordinates." *Id.* (citation omitted, emphasis in original).

In *Peña*, the plaintiff alleged that a lieutenant "gave the order to tase [her] three (3) times." *Id.* at 620-21. This Court held that these allegations pass Rule 12(b)(6) scrutiny for supervisory liability. *Id.* at 621. In this instant appeal, however, the District Court's finding regarding supervisory liability is that "Sheriff

Bailey was solely responsible for supervising the SRT team." ROA.1261. It further found that "Plaintiffs assert that Sheriff Bryan Bailey … was present at the scene; he was actively involved in the negotiations; and he played an important role in use of the alleged excessive force which led to Woods' death." ROA.1264.

Being present at the scene, standing alone, does not create supervisory liability. *Carnaby v. City of Houston*, 636 F.3d 183, 189 (5th Cir. 2011) (citing *Iqbal*, 556 U.S. at 677). And participating in negotiation / de-escalation attempts prior to using "measured and ascending actions that correspond to a suspect's escalating verbal and physical resistance" shows an adherence to Fourth Amendment standards, not a violation of same. *Craig v. Martin*, 49 F.4th 404, 412 (5th Cir. 2022); *Newman v. Guedry*, 703 F.3d 757, 763 (5th Cir. 2012).

There is no finding or evidence that Sheriff Bailey fired a shot or ordered another officer to fire a shot at Woods. There is also no finding or evidence that the Rankin County Sheriff's Department maintained unconstitutional policies that resulted in Woods' death. There is no finding or evidence that Sheriff Bailey acted with deliberate indifference to the rights of Woods or that any of his actions proximately caused Woods' death. Finally, neither the Plaintiffs nor the District Court identify any clearly established law which Sheriff Bailey violated.

In short, the summary judgment record shows that Sheriff Bailey adhered to all constitutional standards. The District Court's denial of qualified immunity on

the supervisory liability claims, especially at the summary judgment stage, is not based on any applicable legal standards and should be reversed and rendered.

## VI.    CONCLUSION

None of the Rankin SRT members violated Woods' Fourth Amendment rights. Alternatively, Sheriff Bailey was behind the MRAP and did not visualize any of the initial shooting. Once he was able to see Woods, Sheriff Bailey took reasonable measures to stop the shooting by ordering a cease fire. Based on these findings by the District Court, it erred as a matter of law by denying qualified immunity to Sheriff Bailey on Plaintiffs' bystander liability claim. Moreover, because Sheriff Bailey neither fired a shot nor ordered any Rankin SRT member to shoot, the District Court erred as a matter of law by denying qualified immunity to Sheriff Bailey on Plaintiffs' supervisory liability claim. Neither the District Court nor Plaintiffs identified existing precedent which squarely governs the specific facts of this case and/or put Sheriff Bailey on notice that his specific conduct was unlawful.

Premised on the foregoing, Sheriff Bailey is entitled to qualified immunity from all claims against him in this litigation. He prays that this Court reverse the District Court's denial of his motion for summary judgment premised on qualified immunity and render judgment in his favor.

**RESPECTFULLY SUBMITTED,** this 6th day of June, 2023.

> **SHERIFF BRYAN BAILEY – Defendant / Appellant**

> **BY:**   /s/ Jason E. Dare
> **JASON E. DARE**

**OF COUNSEL:**

Jason E. Dare (MSB No. 100973)
jdare@bislawyers.com
Biggs, INGRAM & SOLOP, PLLC
Post Office Box 14028
Jackson, Mississippi 39236-4028
Telephone:  (601) 713-1192

## CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of June, 2023, I electronically filed the foregoing *Brief of Appellant* with the Clerk of Court for the U.S. Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system. All counsel of record are registered CM/ECF users, and will be served by the appellate CM/ECF system.

>   /s/  Jason E. Dare
> **JASON E. DARE**

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

Pursuant to 5TH CIR. R. 32.3, the undersigned counsel certifies that this *Brief of Appellant* complies with the type-volume limitations of FED. R. APP. P. 32(a)(7)(B) / 5TH CIR. R. 32.2.

1.    Exclusive of the portions exempted by FED. R. APP. P. 32(f) / 5TH CIR. R. 32.2, this brief contains approximately 7,043 words.

2.    This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5)(A) and 32(a)(6) / 5TH CIR. R. 32.1 because it is printed in a proportionally spaced, serif typeface using Times New Roman 14-point font in text and Times New Roman 12-point font in footnotes produced by Microsoft Word software.

3.    Upon request, undersigned counsel will provide an electronic version of this brief and/or a copy of the word or line printout to the Court.

4.    Undersigned counsel understands that a material misrepresentation in completing this certificate, or circumvention of the type-volume limits in FED. R. APP. P. 32(a)(7)(B) / 5TH CIR. R. 32.2, may result in the Court's striking this brief and imposing sanctions against the person who signed it.

**THIS,** the 6th day of June, 2023.

*/s/  Jason E. Dare*
**JASON E. DARE**