Case No. 23-60163

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

---

**VANESSA BARRETT, AS NATURAL MOTHER AND ADULT NEXT FRIEND OF  G.W., A MINOR, WHO ARE THE HEIRS AND WRONGFUL DEATH BENEFICIARIES OF PIERRE WOODS, DECEASED; DRIS MITCHELL, AS THE NATURAL MOTHER  AND ADULT NEXT FRIEND OF K.W., A MINOR, WHO ARE THE HEIRS AND WRONGFUL DEATH BENEFICIARIES OF PIERRE WOODS, DECEASED**

*Plaintiffs – Appellees*

**v.**

**BRYAN BAILEY, INDIVIDUALLY,**

*Defendant – Appellant*

---

Appeal from the United States District Court
for the Southern District of Mississippi
Northern Division
Cause No.  3:21CV124-HTW-LGI

---

# BRIEF OF APPELLEES

---

Tamekia R. Goliday, Esq.
Mississippi Bar No. 99431
GOLIDAY LAW FIRM
Post Office Box 13632
Jackson, Mississippi 39236-3632
T: (601) 368-1800
F: (769) 233-8095
E: trg@golidaylawfirm.com
*Counsel for Appellees*

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5th Cir. R. 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

| | |
|---|---|
| Appellant/Defendant: | Sheriff Bryan Bailey |
| Additional Defendants: | Zach Acy |
| | George Barrentine |
| | Chase Beemon |
| | Tyson Burleson |
| | Christian Dedmon |
| | A.J. DiMartino, IV |
| | Hunter Elward |
| | Justin Evans |
| | Cody Grogan |
| | Geoff Rauch |
| | Luke Stickman |
| | Chance White |
| | Adam Whittington |
| Counsel for Appellant and Additional Defendants: | BIGGS, INGRAM & SOLOP, PLLC |
| | Jason E. Dare, Esq. |
| Appellees: | Vanessa Barrett |
| | Dris Mitchell |
| Appellees' Counsel: | GOLIDAY LAW FIRM |
| | Tamekia R. Goliday, Esq. |

District Court Judge:               Honorable Judge Henry T. Wingate

Magistrate Judge:                   Honorable Judge LaKeysha Greer Issac

    **SO CERTIFIED**, this the 14th day of August, 2023.

/s/ Tamekia R. Goliday
    TAMEKIA R. GOLIDAY

## STATEMENT REGARDING ORAL ARGUMENT

Appellees, Vanessa Barrett and Dris Mitchell, do not seek oral argument in this matter. There exists no substantial conflict as to the applicable law and the facts surrounding this case are simple, straight forward, and well- documented. As such, the appellate briefs filed by the parties provide this Honorable Court with all the information needed to decide this matter. Appellees do not believe that oral argument would be beneficial to this Honorable Court.

# TABLE OF CONTENTS

**TITLE**                                                                 **PAGE**

CERTIFICATE OF INTERESTED PERSONS . . . . . . . . . . . . . . . . . . . . 2

STATEMENT REGARDING ORAL ARGUMENT . . . . . . . . . . . . . . . 4

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

JURISDICTIONAL STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW . . . . . . 10

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . 18

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

     I.    Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

     II.   The disputed fact issues relating to plaintiffs' bystander
          liability claim are material. . . . . . . . . . . . . . . . . . . . . . . . 23

     III.  The disputed fact issues relating to plaintiffs' supervisory
          liability claim are material. . . . . . . . . . . . . . . . . . . . . . . . 38

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . 43

# TABLE OF AUTHORITIES

**CASES**                                                      **PAGE**

*Amador v. Vasquez*, 961 F.3d 721, 726 (5th Cir. 2020). . . . . . . . . . . . . 10

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,
    106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) . . . . . . . . . . . . . . . . . . . . . . 21

*Bazan v. Hidalgo Cnty.*, 246 F.3d 481 (5th Cir. 2001) . . . . . . . . . . . . . 20

*Carroll v. Ellington*, 800 F.3d 154 (5th Cir. 2015) . . . . . . . . . . . . . . . . 26

*Celotex Corp. v. Catrett*, 477 U.S. 317,
    106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) . . . . . . . . . . . . . . . . . . . . . . 19

*City of Canton v. Harris*, 489 U.S. 378,
    109 S.Ct. 1197, 103 L.Ed.2d 412 (1989) . . . . . . . . . . . . . . . . 31,34

*Cole v. Carson*, 935 F.3d 444 (5th Cir. 2019). . . . . . . . . . . . . . . . . . . . . 26

*Davidson v. Dixon*, 386 F.Supp. 482 (D.Del.1974) . . . . . . . . . . . . . . . . 37

*District of Columbia v. Wesby*, —— U.S. ——,
    138 S. Ct. 577, 199 L.Ed.2d 453 (2018) . . . . . . . . . . . . . . . . . . . . . 22

*Edwards v. Oliver*, 31 F. 4th 925 (5th Cir. 2022) . . . . . . . . . . . . 10,21,38

*Flores v. City of Palacios*, 381 F.3d 391 (5th Cir. 2004) . . . . . . . . . . . . . 9

*Hale v. Townley*, 45 F.3d 914 (5th Cir.1995). . . . . . . . . . . . . . . . . *passim*

*Harlow v. Fitzgerald*, 457 U.S. 800,
    102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) . . . . . . . . . . . . . . . . . . . . . . 21

*Helm v. Rainbow City, Ala.*, 989 F.3d 1265 (11th Cir. 2021) . . . . . . . . 36

*Hughes v. Tobacco Institute, Inc.*, 278 F.3d 417 (5th Cir. 2001) . . . . . . 23

*Ibarra v. Harris Cnty. Tex.*, 243 Fed.Appx. 830 (5th Cir.2007) . . . . . . 25

*Joseph on behalf of Est. of Joseph v. Bartlett*,
    981 F.3d 319 (5th Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . 19,23

*Kokesh v. Curlee*, 14 F.4th 382 (5th Cir. 2021) . . . . . . . . . . . . . . *passim*

*Lewis v. Downey*, 581 F.3d 467 (7th Cir.2009) . . . . . . . . . . . . . . . . . 25

*Lytle v. Bexar County*, 560 F.3d 404 (5th Cir. 2009) . . . . . . . . . . . 10,26

*Mason v. Lafayette City-Parish Consolidated Government*,
    806 F.3d 268 (5th Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . 30,31

*McClendon v. City of Columbia*, 305 F.3d 314 (5th Cir. 2002) . . . . . . . 23

*Melton v. Phillips*, 875 F.3d 256 (5th Cir. 2017)  . . . . . . . . . . . . . . . . 20

*Nowell v. Acadian Ambulance Serv.*,
    147 F.Supp.2d 495 (W.D.La.2001) . . . . . . . . . . . . . . . . . . . . . . . 25

*Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808,
    172 L.Ed.2d 565 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Randall v. Prince George's Cnty., Md.*,
    302 F.3d 188 (4th Cir.2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Reyes v. City of Richmond*, 287 F.3d 346 (5th Cir. 2002) . . . . . . . . . . *23*

*Roque v. Harvel*, 993 F.3d 325 (5th Cir. 2021) . . . . . . . . . . . . 27,28,29

*Samples v. Vadzemnieks*, 900 F.3d 655 (5th Cir. 2018) . . . . . . . . 10,20

*Smith v. Brenoettsy*, 158 F.3d 908 (5th Cir.1998) . . . . . . . . . . . . . . . 38

*Smith v. Mensinger*, 293 F.3d 641 (3d Cir.2002) . . . . . . . . . . . . . . . . . 25

*Snyder v. Trepagnier*, 142 F.3d 791 (5th Cir.1998) . . . . . . . . . . . . 25,39

*Tennessee v. Garner*, 471 U.S. 1,  105 S.Ct. 1694,
        85 L.Ed.2d 1 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Thompson v. Upshur Cnty*, 245 F.3d 447 (5th Cir. 2001) . . . . . . . . . . 40

*Williams v. Kaufman County*, 352 F.3d 994 (5th Cir. 2003) . . . . . . . . 22

**RULES**

Fed. R. Civ. P. 56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

## JURISDICTIONAL STATEMENT

The district court exercised federal question jurisdiction over this matter pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1343 since this case presents constitutional claims. Appellees asserted a claim cognizable under 42 U.S.C. §1983 by alleging that the Sheriff Bailey and certain members of the Rankin County Sheriff Department, while acting under color of state law, violated Pierre Wood's Fourth Amendment rights when they shot and killed him on February 18, 2019. This appeal arises from the March 17, 2023, *Order Denying Qualified Immunity* entered by the United States District Court for the Southern District of Mississippi, Honorable Judge Henry T. Wingate presiding.

*"The denial of a motion for summary judgment based on qualified immunity is immediately appealable under the collateral order doctrine to the extent that it turns on an issue of law." Flores v. City of Palacios*, 381 F.3d 391, 393 (5th Cir. 2004). Where the district court determines that genuine issues of material fact preclude a determination of qualified immunity, this Court has jurisdiction only to address the legal question of whether the genuinely disputed factual issues are material for the

purposes of summary judgment. *Lytle v. Bexar County, Texas*, 560 F.3d 404, 408 (5th Cir. 2009). This Court lacks jurisdiction to consider the correctness of the plaintiff's version of the facts and cannot review the district court's factual determination that a genuine factual dispute exists. *Edwards v. Oliver*, 31 F.4th 925, 930 (5th Cir. 2022). See also, *Amador v. Vasquez*, 961 F.3d 721, 726 (5th Cir. 2020)("*We have no jurisdiction to hear an interlocutory appeal ... when a district court's denial of qualified immunity rests on the basis that genuine issues of material fact exist.*")

Because there exists no contested issues of law in this matter, this Court's jurisdiction is limited to determining "*whether the factual disputes that the district court identified are material to the application of qualified immunity.*" *Samples v. Vadzemnieks*, 900 F.3d 655, 660 (5th Cir. 2018).

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1. Whether there exists material factual disputes which preclude summary judgment on plaintiffs' bystander liability claim?

2. Whether there exists material factual disputes which preclude summary judgment on plaintiffs' supervisory liability claim?

## STATEMENT OF THE CASE

*Procedural History*

Appellees, Vanessa Barnett and Dris Mitchell, filed this §1983 lawsuit, alleging that Sheriff Bryan Bailey and certain members of the

Rankin County Sheriff's Department violated the Fourth Amendment rights of Pierre Woods, hereinafter "*Woods*",  when law enforcement officers shot and killed Woods on February 18, 2019.  ROA 18-29.

The appellees are the natural mothers of G.W. and K.W., respectively — Woods' two surviving minor children.  *Id.*  On February 17, 2021, the appellees filed this action on behalf of their minor children against the City of Pelahatchie[1], Pelahatchie Police Chief Joseph Daughtry, Rankin County, Mississippi, and Rankin County Sheriff Bryan Bailey.  *Id.*

On April 20, 2021, Sheriff Bailey, in his individual and official capacities, filed a Rule 12(c) motion to dismiss premised on qualified immunity. ROA 54-76.  The motion was denied without prejudice on March 14, 2022.  ROA 251-52.  In its *Order* denying the qualified immunity motion, the district court granted appellees ninety (90) days to conduct qualified immunity-related discovery and likewise, gave appellees an opportunity to file an amended complaint after discovery was complete. *Id.*

---

[1]The claims filed against Pelahatchie Police Chief Joseph Daughtry and the City of Pelahatchie have been dismissed.

Appellees  filed their *First Amended Complaint* on July 7, 2022.
ROA 260-294.  The *First Amended Complaint* added certain members of
the Rankin County Sheriff Department as defendants in this action[2].
Subsequently, on July 18, 2022, the members of the Rankin County
Sheriff Department filed their *Answer and Defenses to Plaintiffs' First
Amended Complaint* and a Rule 12(c) motion to dismiss on the basis of
qualified immunity. The Rule 12(c) motion is currently pending before the
district court.

Sheriff Bailey, on July 18, 2022, filed his renewed  Rule 12 motion
to dismiss, or alternatively, motion for summary judgment on the basis of
qualified immunity. ROA 326-427.  The motion was denied on March 17,
2023. ROA 1257 - 1269.  Aggrieved by the district court's ruling, Sheriff
Bailey perfected this appeal asserting that the district erred when it
denied his qualified immunity motion.  ROA 1270-71.

*Statement of Facts*

Considering the fact that this Court's jurisdiction is limited to
determining whether the factual disputes that the district court identified

---

[2]Hunter Elward and Christian Dedmon were named as defendants in this
matter.  They have since been terminated from the Rankin County Sheriff's
Deparment and subsequently, plead guilty to a litany of federal charges stemming
from their abuse and torture of  Michael C. Jenkins and Eddie Parker.

are material to the application of qualified immunity, the appellees adopt

and recite in *toto* the district court's *Statement of Facts*. The *Statement of*

*Facts* reads, as follows:

> On February 18, 2019, law enforcement officers responded to reports of fired gunshots at 104 Dillard Street, Pelahatchie, Mississippi, a residence belonging to [Pierre] Woods' cousin. Defendants assert that when Rankin County dispatch received a call for assistance with an active shooter, the information was relayed to Sheriff Bailey. According to Sheriff Bailey, he activated the Rankin County Special Response Team ("*Rankin SRT*")[3] to the scene, and then personally drove to the residence. The SRT Team[4] included Defendants Rankin County Deputies, named above. Sheriff Bailey was solely responsible for supervising the SRT team.
>
> Defendants state that when they arrived on the scene, Woods was inside the home alone and appeared disoriented, mentally challenged and possibly intoxicated. Sheriff Bailey contends that he, along with other officers and the Rankin County hostage negotiator, attempted to negotiate with Woods, urging Woods to relinquish his weapon and exit the house peacefully. These negotiation attempts allegedly lasted over an hour. Despite Defendants' repeated requests, Woods initially refused to come out of the residence. The Rankin SRT then placed a mobile robot with video feedback into the house to determine

---

[3] The SRT team is a special response team comprised of Rankin County deputies who are selected to receive tactical operations training and develop a level of proficiency in the use of specialized equipment and firearms. The Rankin County SRT team is currently under FBI scrutiny as six members of the SRT team recently plead guilty to a litany of federal charges stemming from their abuse and torture of Michael C. Jenkins and Eddie Parker.

[4] *See* www.wlbt.com/video/2023/08/04/six-former-rankin-co-officers-plead-guilty -charges-related-abuse-black-men/

Woods' physical location within the residence. Defendants claim that "*after all negotiation tactics had failed, and for the protection of the officers and bystanders around the residence*", the Rankin SRT fired multiple oleoresin capsicum gas (tear gas) canisters into the home. Woods, thereafter, existed the residence via the front door.

Plaintiffs have submitted a 29-second Video depicting Woods' exit from the house and death [Docket no. 35]. This Video was filmed by a neighbor. Defendants contend that after tear gas was deployed into the house, Woods fired three shots from the bedroom, which can be heard at 0:00:01 through 0:00:02 of the Video. This court notes that the Video later shows Woods exiting the premises; however, the footage does not depict any events that transpired inside the residence. Nor does the Video make clear whether Woods was armed at the time of his exit. The parties present inconsistent accounts of what transpired.

*Plaintiffs' Amended Complaint* states:
While physically disoriented and visually impaired from the tear gas, Woods began to run toward the front door of his home with his hands extended above his head. Although Woods had a pistol in one of his hands, both his hands were extended above his head as he approached the front door. Once he reached the front door of his home, Woods immediately threw the pistol to the ground and it landed in the area where Deputy Hunter Elward and Deputy Zach Acy were positioned. Upon [Woods'] exit from the home, Defendants, without warning, began firing their weapons at Woods. [Woods] immediately fell to the ground and even after he fell to the ground, the Defendants continued to fire their weapons at Woods, which left both his body and home riddled with bullet fragments...

[Docket no. 45 at ¶ 23].
Plaintiffs allege that after Woods tossed his weapon to the ground and crossed the threshold of the front door, he posed no threat to the Defendants.

In addition to the allegations set forth in the *Amended Complaint*, appellees presented affidavit testimony of three witnesses, who observed the shooting and  corroborated the fact that Woods posed no threat to the members of the Rankin SRT when he reached the front door of his home. ROA 1235-1240.  The *Statement of Facts*, next reads:

> Defendants, however, paint a different picture. The Rankin County Deputies, members of the Rankin SRT, stated that they saw Woods pointing his gun at the officers. Defendants claim that they responded with deadly force because they perceived a legitimate threat from Woods. A statement submitted by Investigator Zach Acy, a member of Rankin SRT, who was present on the scene, states:

>> Investigator Acy fired one impact round at the suspect due to being in fear for his life, but the suspect continued to advance. The suspect was then shot by other officers that had lethal means due to him still running with the pistol in his hand. Once the suspect got to the front door he threw the pistol at officers on the car and it struck Deputy Elward who was next to Investigator Acy.

> [Docket no. 66-3].
> Defendants claim that the three shots Woods fired from within the residence were aimed at the Rankin SRT. Sheriff Bailey states that he heard the gunshots, and when he heard the officers "*return fire*", he was situated behind the Rankin SRT armored vehicle. [Docket no. 47-3, pp, 59-60]. Sheriff Bailey claims he did not instruct the Rankin SRT to start shooting, nor did he see the shooting. [Id., pgs. 60-61]. Furthermore, claims Sheriff Bailey, he never fired a shot. [Id., pg. 94].

Finally, says, Sheriff Bailey, as soon as he was able to obtain a visual of Woods and see that Woods was on the ground, yelled, "*Cease fire, cease fire.*" [Id., pg. 61]. Other officers then allegedly repeated this phrase out loud. The parties agree that the shooting stopped after Sheriff Bailey yelled "*Cease fire!*".

Plaintiffs assert the following claims against Sheriff Bailey:

Bailey decided upon, implemented, and oversaw the strategies and tactics used by the defendant officers on the scene. The defendant officers violated Wood's constitutional rights and Bailey, acting in a supervisory role at the time of the shooting death of Woods, had every opportunity in his supervisory role to take reasonable measures to prevent harm to Woods and failed to do so.

Bailey allowed the defendant officers to gun Woods down despite the fact that he posed no threat to the officers at the time that he was shot. More specifically, Bailey gave the defendant officers authority to shoot Woods, positioned himself where he could no longer see Woods, and allowed the officers to continue to shoot Woods after he fell to the ground and clearly was no longer a threat before he issued the command to "*Cease Fire.*" Despite the fact that Woods was severely wounded and helpless, the defendant officers obeyed Bailey's directive to shoot at Woods until they received the "*Cease Fire*" order from him.

According to Sheriff Bailey, the RCSD's *Use of Force Policy* requires that officers "*use only enough force that's necessary to effect an arrest, to stop a threat. You know, you try to find that balance.*" ROA 585, ln. 3 - 7. When asked whether he trains his deputies to stop shooting when a threat is over, Sheriff Bryan Bailey responded, as follows:

Q.   Do you train your officers to stop shooting when a threat
     is over?

A.   No, ma'am, I don't – I don't guess we train them to stop
     shooting. The – you know, the – the – just stop – when
     the threat is over with is when they stop shooting.

Q.   Okay. Do you train your deputies such that they would
     understand that it's unreasonable to keep shooting a
     suspect after the threat is over?

A.   No. I think we train them to shoot until the threat is
     stopped. Now, on each individual person, that may be
     different to them, but again, according to our policy, they
     – would be that it's used to stop a threat.

Q.   Okay. And so you would agree with me that the use of
     force should stop when the threat is over?

A.   Yes, ma'am.

ROA 585, ln. 20 - 586, ln. 14. The *Statement of Facts*, next reads:

> [Docket no. 45, ¶ 64].
> Plaintiffs claim that, at the point that Woods crossed the
> threshold of the residence, he posed no immediate threat to
> defendants or others and as such, there existed no reason to
> employ deadly force against Woods. Furthermore, say
> Plaintiffs, Defendants employed unjustified, excessive force
> when they continued to shoot Woods after he had fallen to the
> ground and was no longer a threat. Plaintiffs assert that
> Sheriff Bryan Bailey is individually liable because: he was
> present at the scene; he was actively involved in the
> negotiations; and he played an important role in use of the
> alleged excessive force which led to Woods' death. Sherriff
> Bailey, contrariwise, asserts that he is entitled to qualified
> immunity on any claims against him.

ROA 1257 -1269.  The Mississippi State Medical Examiner, J. Brent

Davis, M.D., performed an autopsy on Woods and determined that his

manner of death was homicide. More specifically, Woods died as a result of multiple gunshot wounds to his head, torso, and right upper and lower extremities[5]. A copy of the *Autopsy Report* and *Photographs* are attached to the hearing transcript.

## SUMMARY OF THE ARGUMENT

The district court rightfully denied qualified immunity to Sheriff Bailey as there exists disputed factual issues that preclude summary judgment. The record evidence is clear that the disputed factual issues regarding the bystander claim and the supervisory liability claim are material. Because the disputed factual issues are material, this Honorable Court lacks jurisdiction to consider the propriety of the summary judgment denial and likewise, should remand this matter back to the district court for further proceedings.

---

[5]Sheriff Bailey asserts that plaintiff failed to present summary judgment evidence that any shots fired after Woods fell to the ground caused his death. The only issue before this Court centers on qualified immunity as the district has made no ruling as to whether shots fired after Woods fell to the ground caused his death. Furthermore, the *Notice of Appeal* clearly indicates that Sheriff Bailey's appeal centers on the district court's denial of qualified immunity. As such, the proximate cause issue raised by Sheriff Bailey is not properly before this Court.

# **ARGUMENT**

## I.   STANDARD OF REVIEW

Summary judgment is appropriate if "*the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law*." Fed. R. Civ. P. 56(a).  In other words, summary judgment is appropriate when "*the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof*." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In qualified immunity cases, "*[t]he plaintiff must show that there is a genuine dispute of material fact and that a jury could return a verdict entitling the plaintiff to relief*."  *Joseph v. Bartlett*, 981 F.3d 319, 330 (5th Cir. 2020).  "*But, to overcome qualified immunity, the plaintiff's version of those disputed facts must also constitute a violation of clearly established law*." *Id.*

When a defendant invokes qualified immunity and the district court denies the defendant's motion for summary judgment, Fifth Circuit jurisdiction is affected in two ways— "*we review earlier than we otherwise would, and we review less than we otherwise would*." *Kokesh v. Curlee*, 14

F.4th 382, 391 (5th Cir. 2021). First off, a defendant officer is allowed to advance an interlocutory appeal "*even though denials of summary judgment are not generally final, appealable orders under 28 U.S.C. § 1291." Id.* See also, *Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 490 (5th Cir. 2001) (discussing the collateral order doctrine). Second, "*the district court's finding that a genuine factual dispute exists is a factual determination that this court is prohibited from reviewing in this interlocutory appeal." Kokesh*, 14 F.4th at 390 (quoting *Good v. Curtis*, 601 F.3d 393, 397 (5th Cir. 2010)). As such, when reviewing the denial of qualified immunity, the Fifth Circuit must accept the district court's determination that there are genuine fact disputes. *Id.* at 391; *Melton v. Phillips*, 875 F.3d 256, 261 (5th Cir. 2017) ("*[W]e lack jurisdiction to review the genuineness of a fact issue but have jurisdiction insofar as the interlocutory appeal challenges the materiality of [the] factual issues.*")

The Fifth Circuit, when reviewing the denial of qualified immunity, must simply determine "*whether the factual disputes that the district court identified are material to the application of qualified immunity." Samples v. Vadzemnieks*, 900 F.3d 655, 660 (5th Cir. 2018). Factual disputes are

material if they "*might affect the outcome of the suit under the governing law.*" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In effort to avoid improper review of the genuineness of the facts, this Honorable Court should only consider whether the district court correctly assessed the legal significance and materiality of the disputed facts in plaintiff's §1983 claim. *Edwards v. Oliver*, 31 F.4th 925, 929 (5th Cir. 2022).

## II. THE DISTRICT COURT RIGHTFULLY DENIED SHERIFF BAILEY'S MOTION FOR SUMMARY JUDGMENT PREMISED ON QUALIFIED IMMUNITY.

Generally, "*government officials are entitled to some form of immunity from suits for damages.*" *Harlow v. Fitzgerald*, 457 U.S. 800, 807, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Government officials who perform discretionary functions are entitled to qualified immunity, which protects them "*from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.*" *Id.* at 818, 102 S.Ct. 2727. Qualified immunity thus balances "*the need to hold public officials accountable when they exercise power irresponsibly*" with "*the need to*

*shield officials from harassment, distraction, and liability when they perform their duties reasonably.*" *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009).

When ruling on the qualified immunity defense in a 42 U.S.C. § 1983 case, the Court is required to undertake a two-prong analysis. *Williams v. Kaufman County*, 352 F.3d 994, 1002 (5th Cir. 2003). The Court must evaluate whether the plaintiffs' allegations establish a constitutional violation. *Id.* If a constitutional violation occurred, the Court must determine whether the constitutional right violated was "*clearly established*" such that a reasonable person would have known of the right. *Id.* In short, "*[O]fficers are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time.*" *District of Columbia v. Wesby*, —— U.S. ——, 138 S. Ct. 577, 589, 199 L.Ed.2d 453 (2018).

As the *Williams* Court reiterates, "*[t]he appropriate inquiry, therefore, is whether the state of the law [at the time of the violation] gave [defendants] fair warning that their alleged treatment of [plaintiffs] was unconstitutional.*" *Id.* Thus, in order to be entitled to qualified immunity,

the defendant's conduct must have been objectively reasonable under the law at the time. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002). When ruling on a defense of qualified immunity, this Court must review the facts in the light most favorable to the party asserting injury. *Hughes v. Tobacco Institute, Inc.*, 278 F.3d 417, 420 (5th Cir. 2001).

"*To determine whether a denial of summary judgment based on qualified immunity is immediately appealable, this Court looks at the legal argument advanced.*" *Reyes v. City of Richmond*, 287 F.3d 346, 350 (5th Cir. 2002). "*An officer challenges materiality when he contends that 'taking all the plaintiff's factual allegations as true no violation of a clearly established right was shown.'*" *Id.* at 351 (quoting *Cantu v. Rocha*, 77 F.3d 795, 803 (5th Cir. 1996)).

### (A)  The fact issues relating to plaintiffs' bystander liability claim are material.

"*A]n officer is liable for failure to intervene when that officer: (1) knew a fellow officer was violating an individual's constitutional rights, (2) was present at the scene of the constitutional violation, (3) had a reasonable opportunity to prevent the harm but nevertheless, (4) chose not to act.*" *Joseph on behalf of Est. of Joseph v. Bartlett*, 981 F.3d 319, 343 (5th Cir. 2020).

In *Hale v. Townley*, 45 F.3d 914 (5th Cir.1995), a plaintiff brought a §1983 action for the use of excessive force during a search and arrest. *Id.* at 916. One of the police officers allegedly stood by, laughed, and shouted encouragement while another officer assaulted the plaintiff. *Id.* at 919. Characterizing the plaintiff's claim as one of bystander liability, this court agreed that "*an officer who is present at the scene and does not take reasonable measures to protect a suspect from another officer's use of excessive force may be liable under section 1983.*" *Id.* In light of the allegations and evidence in that case, the court concluded that there was sufficient evidence to create a genuine issue of material fact concerning the bystanding officer's "*acquiescence in the alleged use of excessive force.*" *Id.*

According to *Hale,* officers have a reasonable opportunity to intervene if they are present at the scene and they, in turn, violate their duty to intervene if their conduct demonstrates they acquiesced to the unconstitutional conduct engaged in by others. *Id.* at 919. *Hale* is clearly established law that provides fair notice to officers of their duty to intervene, rather than to acquiesce, in the unconstitutional conduct of others.

The *Hale* holding is consistent with other circuits' determination that an officer may be liable under § 1983 under a theory of bystander liability where the officer "*(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act.*" *Randall v. Prince George's Cnty., Md.*, 302 F.3d 188, 204 (4th Cir.2002). See also, *Lewis v. Downey*, 581 F.3d 467, 472 (7th Cir.2009); *Smith v. Mensinger*, 293 F.3d 641, 650–51 (3d Cir.2002); *Nowell v. Acadian Ambulance Serv.*, 147 F.Supp.2d 495, 507 (W.D.La.2001). However, liability will not attach where an officer is not present at the scene of the constitutional violation. *Snyder v. Trepagnier*, 142 F.3d 791, 801 n. 11 (5th Cir.1998). See also, *Ibarra v. Harris Cnty. Tex.*, 243 Fed.Appx. 830, 835 & n. 8(5th Cir.2007)("*A bystander liability claim requires the plaintiffs to show that the officer was present at the scene and did not take reasonable measures to protect a suspect from excessive force.*")

> **(1)  There exists a genuine disputed issue as to whether Woods' Fourth Amendment rights were violated by members of the Rankin County SRT.**

Since at least 1985, excessive force jurisprudence has made it abundantly clear that it is unreasonable for an officer to "*seize an*

unarmed, nondangerous suspect by shooting him dead." *Tennessee v. Garner*, 471 U.S. 1, 11, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985). Even when a suspect is armed, a warning must be given, when feasible, before the use of deadly force. *Tennessee v. Garner*, 471 U.S. 1, 11-12, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985)).

It is a clearly established violation of the Fourth Amendment when an officer shoots an individual holding a gun but the gun was not aimed at the officer. *Id.* See also *Cole v. Carson*, 935 F.3d 444 (5th Cir. 2019)(use of deadly force without warning in a situation where officers were no in immediate danger violates the Fourth Amendment).

Excessive force jurisprudence has also long established that an officer's continued use of force on a subdued subject is objectively unreasonable. *Carroll v. Ellington*, 800 F.3d 154, 177 (5th Cir. 2015). In short, "*an exercise of force that is reasonable at one moment can become unreasonable in the next if the justification for the use of the force has ceased.*" *Lytle v. Bexar County*, 560 F.3d 404, 409 (5th Cir. 2009). Officers do not have "*an ongoing license to kill an otherwise unthreatening suspect who was threatening earlier.*" *Id.* (quoting *Abraham v. Raso*, 183 F.3d 279, 294 (3d Cir. 1999)).

Dating back as far as 1995, excessive force jurisprudence makes it clear that "*an officer who is present at the scene and does not take reasonable measures to protect a suspect from another officer's use of excessive force may be liable under section 1983.*" *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir.1995).

There is no doubt that the well-established excessive force jurisprudence provided the Rankin County SRT with fair warning that their treatment of Woods constituted excessive force and was unconstitutional. Every reasonable officer understands that using deadly force on a man that has raised his hands above his head, tossed his weapon to the ground and signaled surrender violates the Fourth Amendment. Furthermore, every reasonable officer knows that using deadly force on a man that is no longer a threat constitutes excessive force and is unconstitutional. Every reasonable officer understands that he has a duty to protect a suspect from another officer's use of excessive force.

*Roque v. Harvel*, 993 F.3d 325 (5th Cir. 2021) involves a police shooting and killing of a suicidal man experiencing a mental health crisis. The police officers arrived at the decedent's home and found him pacing

in front of his home with a black gun in his waistband. Shortly after the officers arrived, the decedent pulled the gun from his waist and pointed it at his head and threatened to kill himself. The officers instructed the decedent to put the gun down. Upon hearing the command, the decedent turned around to face the officers with the gun in the air. In the split second between the command to put the gun down and decedent turning his body toward the officers with his arm and the gun in the air, one of the officers shot the decedent. The decedent immediately doubled over, dropped the gun and stumbled from the sidewalk to the street.

A video from nearby home surveillance systems revealed that the black gun hit the sidewalk after the decedent was shot but the shooting officer claimed he did not see the gun fall and consider the decedent to be a continuing threat. Two seconds after the first shot, while the decedent was stumbling into the street, the officer fired two additional shots at the decedent.

The district court denied qualified immunity and the Fifth Circuit affirmed the district court's decision. The Fifth Circuit determined that the central issue was whether the second and third shots were excessive and objectively unreasonable. Because the officer used deadly force, the Fifth Circuit determined that "*the answer to these intertwined questions*

*depends on whether Jason posed a threat of serious physical harm after the*

*first shot struck him. Two factual disputes concerning the placement of the*

*gun and Jason's movements prevent us from answering these questions.*"

*Id.* at 333. The court further reasoned, as follows:

> First, the gun. Harvel asserts that, after the first shot, he perceived Jason to be a continuing threat to his mother because he didn't see Jason drop his gun. Plaintiffs argue, with video and expert evidence, that a reasonable officer should have seen Jason drop his black gun on the white sidewalk in broad daylight. Second, Jason's movements. Harvel claims that Jason was "*still moving and ambulatory*" after the first shot. Plaintiffs counter that the video shows Jason double over and stumble into the street. Even though Jason was still moving, Plaintiffs assert that these movements show a wounded man moving away from everyone at the scene.
>
> Both fact disputes go to whether a reasonable officer would have known that Jason was incapacitated after the first shot. If Jason was incapacitated, he no longer posed a threat. And if he no longer posed a threat, Harvel's second and third shots were excessive and unreasonable. Whether Jason was incapacitated is therefore not only disputed but material to Plaintiffs' Fourth Amendment claim.

The appellate court further determined that the violation of Fourth

Amendment rights was "*clearly established*" since the existing excessive

force jurisprudence makes it clear that an officer violates the Fourth

Amendment if he shoots an unarmed, incapacitated suspect who is moving

away from everyone present at the scene. *Id.* at 339.

In *Mason v. Lafayette City-Parish Consolidated Government*, 806 F.3d 268 (5th Cir. 2015), officers responded to a suspected armed robbery at an apartment, which quickly turned into a police shooting and killing. The apartment belonged to the decedent's girlfriend, and both the decedent and his girlfriend were inside the apartment. When the police arrived, the couple opened the door and found officers with their guns drawn. The officers ordered the parties to put their hands up and get on the ground. One of the officers unleashed his dog on the decedent after he saw, and yelled to the other officers, that the decedent had a gun.

The officer claimed that when the dog attacked the decedent, he reached for his gun. The officer, likewise, started shooting. The officer's initial round of five shots all hit the decedent in different parts of his body. After the fifth shot, the decedent was face down on the ground, and the officer temporarily stopped firing. The officer claimed that the decedent made a movement that indicated he was reaching for his gun, so the officer fired two more shots into the decedent's back. The decedent died at the scene. The decedent's girlfriend claimed that after the first five shots, Mason only picked up his head and put it back down: he never moved in

a threatening manner. An expert also testified that after the first five shots, the decedent could have moved, but not effectively, and moving his arm toward the gun would have been very painful.

The Fifth Circuit held that the officer was entitled to qualified immunity for the first five shots, but given the competing narratives, there were material factual disputes as to the final two shots. Specifically, whether decedent was incapacitated after the first five shots was disputed and material to the outcome of the case. The court further held that, under *Garner*, an officer cannot use deadly force when a suspect poses no immediate threat, and it was "*obvious*" that an officer should not shoot an incapacitated suspect. Ultimately, the Fifth Circuit concluded that whether the decedent was incapacitated was material to both the constitutional violation and the clearly established law.

*Garner*, *Roque* and *Mason* clearly establish that an officer violates the Fourth Amendment if he shoots an unarmed, incapacitated suspect. In the case *sub judice*, Sheriff Bailey alleges that Woods' Fourth Amendment rights were not violated by the use of deadly force despite the fact that the video of the shooting clearly shows that once Wood crossed

the threshold of his residence, he was shot and immediately fell to the ground and was completely incapacitated. After his incapacitation, members of the Rankin County SRT continued to shoot Woods although he posed no threat.

Like *Roque* and *Mason*, it is clear that whether Woods was incapacitated after he crossed the threshold of his residence was material to both the constitutional violation and the clearly established law. Furthermore, there exists a disputed issue of fact as to whether Woods posed a threat when he approached the threshold of his residence.

As noted by the district court, the accounts given by members of the Rankin County SRT raise serious factual questions as to "*whether Woods posed a threat at the time he crossed the threshold of the residence; whether Woods pointed his weapon at the officers upon exiting the residence; [and] whether Woods surrendered his weapon immediately upon existing the residence*" ROA 1267-68. More specifically, Zach Acy testified that once Woods reached the front door, he threw his pistol toward the officers located near the front door and ultimately, the weapon struck Hunter Elward. *Id.* The tossing of the pistol clearly was a sign of surrender.

Deputy Tyson Burleson, on the contrary, alleges that after Woods fell to the ground, he *"was aiming his gun at me." Id.* Deputy Chase Beeman alleges that when Woods entered the frame of the front door he *"still had the weapon in his hand at shoulder level pointed at myself and the entry team." Id.* The district court properly determined that the contradictory testimony about the position and whereabouts of the gun as Woods exited the home created a genuine disputed issue of fact as to whether Woods posed a threat at the time that he crossed the threshold of his home and whether the force used against Woods after he reached the front door was excessive.

Pursuant to the proper standard of review, this Honorable Court is prohibited from reviewing the district court's determination that there exists a genuine factual dispute as to whether Woods posed a threat at the time that he crossed the threshold of his home and whether the force used against Woods after he reached the frame of the front door was excessive, but rather must determine whether the factual disputes identified by the district court are material to the application of qualified immunity. Like *Roque* and *Mason*, disputed issues identified by the

district court are material to the application of qualified immunity since bystander liability requires that plaintiffs first prove that a fellow officer violated Woods' constitutional rights. The record evidence is clear that there exists material issues of disputed facts as to whether Woods posed a threat at the time that he crossed the threshold of his home and whether the force used against Woods after he reached the frame of the front door was excessive.

> **(2)** **There exists a genuine disputed issue as to whether Sheriff Bailey had a reasonable opportunity to realize the excessive the force used by the Rankin County SRT and intervene to stop it.**

The record evidence in the case *sub judice* raises a fact issue as to whether Sheriff Bailey had a reasonable opportunity to realize the excessive force used by the deputies and intervene to stop it. Sheriff Bailey argues that there was no time or opportunity for him to intervene and that he could not perceive what the deputies were doing. The arguments, however, fall into the category of factual disputes that a jury must decide.

While recounting the events leading to the Woods' death, it is clear that Sheriff Bailey, despite his location, could readily hear the onslaught

of shots fired by the deputies. The deputies discharged an excessive number of bullets into Woods and his residence. See photographs of Woods' residence. ROA 760-770. The video of the shooting further shows that the deputies discharged an excessive number of bullets into Woods and his residence. Sheriff Bailey could clearly hear the shots and knew or should have known that the deputies were violating Wood's Fourth Amendment rights.

Sheriff Bailey testified that immediately prior to Woods exiting his residence, "*I heard some shots come from inside the house – sounded like they came from inside the house. And then all of a sudden, I heard a lot of our guys shooting back*." ROA 705, ln. 13 - 24. This testimony makes it clear that Sheriff Bailey could distinguish the sound of the weapon fired by Woods from the weapons discharged by the deputies. A reasonable inference can then be drawn that since Sheriff Bailey could distinguish the sound of the weapon fired by Woods from the weapons discharged by the deputies, he reasonably should have know that the deputies were violating Wood's Fourth Amendment rights: the amount of bullets discharged by the deputies was clearly excessive and he could hear the bullets as they were being discharged.

Furthermore, it is clear that the deputies were relying of Sheriff Bailey to instruct them to stop shooting since they only stopped shooting after he yelled "*cease fire*", despite various deputies being in a position where they could see Woods was incapacitated and no longer a threat. The district court, in essence, determined that there existed a genuine issue of fact as to whether Sheriff Bailey has the sole control and authority to order a "*cease fire*", and whether the SRT members would only stop shooting Woods after receiving a "*cease fire*" command for Sheriff Bailey. These disputed issues identified by the district court are material to the application of since bystander liability requires that plaintiffs prove that Sheriff Bailey had a reasonable opportunity to prevent the harm and chose not to act in a timely manner.

Furthermore, Sheriff Bailey admits that he made the decision to deploy the oleoresin capsicum gas and was responsible for the strategy decisions made by the SRT team. He was present at scene and was actively involved in the negotiations, handling of the incident and ultimate excessive force, which led to the death of Woods. *Helm v. Rainbow City, Ala.*, 989 F.3d 1265, 1278 (11th Cir. 2021) ("*in cases where*

*the use of force is declared clearly unconstitutional, the officers that failed to intervene are 'no more entitled to qualified immunity than [the officer using force].'* ") Similarly, in *Davidson v. Dixon*, 386 F.Supp. 482 (D.Del.1974), the district court held that a superior officer who was present at an inmate's beating, had knowledge of it, and acquiesced in it, was a direct participant in the attack, his actions or inactions were sufficient to render him liable, since the effect of his presence, office and failure to intervene was to sanction and encourage the unlawful activity.

Like *Helm* and *Davidson*, Sheriff Bailey had knowledge that the deputies were using excessive force and he acquiesced in their behavior when he failed to immediately stop the use of force. His actions and inactions create a genuine issue of fact as to whether he is liable for failing to timely intervene and prevent the violations of Wood's Fourth Amendment rights, thereby eroding his qualified immunity defense.

The question of whether Sheriff Bailey should have intervened and stopped the deputies from discharging their weapons sooner than he did falls into the category of factual disputes that a jury must decide. In sum, his presence, position of authority and failure to intervene sanctioned and encouraged the unlawful activity.

This Honorable Court is prohibited from reviewing the genuineness of these disputed facts but rather must determine whether these issue are material to the application for qualified immunity. Like *Helm* and *Davidson*, these genuine disputed issues are material to the question of whether Sheriff Bailey is liable for failing to timely intervene and prevent the violations of Wood's Fourth Amendment rights. Because the factual disputes in this matter are material, this Honorable Court lacks jurisdiction to consider the propriety of the summary judgment denial. *Edwards v. Oliver*, 31 F. 4th 925, 932 (5 Cir. 2022). Therefore, this Honorable Court should dismiss this interlocutory appeal for lack of jurisdiction.

**(B)  The fact issues relating to plaintiffs' supervisory liability claim are material.**

The elements of a §1983 supervisory liability claim, based on failure to train or supervise, are that: (1) supervisor either failed to supervise or train subordinate officials; (2) causal link exists between failure to train or supervise and violation of plaintiff's rights; and (3) failure to train or supervise amounts to deliberate indifference. *Smith v. Brenoettsy*, 158 F.3d 908, 911-12 (5th Cir.1998). Deliberate indifference requires a showing of more than negligence or even gross negligence. *City of Canton*

*v. Harris*, 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). Deliberate indifference may be shown and a supervisor found to be deliberately indifferent where "*in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights.*" *Id.* at 390. See also *Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir.1998).

Considering the duties and responsibilities of the members of the SRT in dealing with hostile and often violent situations, it is imperative that members of the team have adequate supervision and training. Sheriff Bailey admits that his deputies are not trained to "*understand that it's unreasonable to keep shooting a suspect after the threat is over,*" which is evidenced by the fact that even after Woods was clearly incapacitated, the Rankin County deputies continued to shoot him although he posed no threat. ROA 695, ln. 20 - ROA 696, ln. 14. This lack of supervision and training obviously would result of the violation of constitutional rights. Furthermore, the fact that Sheriff Bailey was present and failed to timely intervene and stop the deputies from discharging their weapons sooner

clearly creates a material factual dispute as to whether he sanctioned and encouraged the unlawful activity. Sheriff Bailey failed to properly train and supervise the members of the SRT team and that failure resulted in deliberate indifferent to Wood's Fourth Amendment rights.

Although a single incident is usually insufficient to demonstrate deliberate indifference, this case sets forth an exception to the general rule. In light of the duties assigned to specific officers or employees of the SRT, the need for more or different supervision and training is so obvious, and the inadequacy of such would constitute deliberate difference. Therefore, this Honorable Court should find that a material dispute exists as to whether Sheriff Bailey's actions lead the Rankin County SRT that he sanctioned and encouraged their unlawful behavior. Based on this disputed issue, this Honorable Court should dismiss this interlocutory appeal for lack of jurisdiction.

In the alternative, if this Court finds that the district court failed to set forth the disputed factual issues giving rise to the supervisory liability claim, this Court should remand this matter back to the district court so that the trial court can clarify its order. *Thompson v. Upshur Cnty*, 245 F.3d 447, 456 (5th Cir. 2001).

## <u>CONCLUSION</u>

Because the factual disputes in this matter are material, appellees, Vannessa Barrett and Dris Mitchell, requests that this Honorable Court dismiss this interlocutory appeal for lack of jurisdiction and remand this matter back to the district court  for further proceedings.

**RESPECTFULLY SUBMITTED**, this the 14th day of August, 2023.

/s/   Tamekia R. Goliday
TAMEKIA R. GOLIDAY
ATTORNEY FOR APPELLEES

**OF COUNSEL:**
Tamekia R. Goliday, Esq.
Mississippi Bar No. 99431
GOLIDAY LAW FIRM
Post Office Box 13632
Jackson, Mississippi 39236-3632
T: (601) 368-1800
F: (769) 233-8095
*Counsel for Appellees*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, Tamekia R. Goliday,  does hereby certify that a true and correct copy of the **BRIEF OF THE APPELLEE** was delivered to all counsel of record on August 14, 2023, in compliance with the 5th Cir. R. 25.2.5, via the Appellate *CM/ECF* system or other designated form of service.

**SO CERTIFIED**, this the 14th  day of August, 2023.

/s/ Tamekia R. Goliday
TAMEKIA R. GOLIDAY

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)</u>

1.     This brief complies with the type volume limitations of Fed.R.App.P. 32(a)(7)(B) since this brief contains 7,117 words, excluding the parts of the brief exempted by Fed.R.App.P. 32(a)(7)(B)(iii).

2.     This Brief complies with the typeface requirements of Fed.R.Civ.P. 32(a)(5) and the type style requirements of Fed.R.App.P. 32(a)(6) since this brief has been prepared in the proportionally spaced typeface using *WordPerfect X5* in Century Schoolbook, 14 point typeface.

**SO CERTIFIED**, this the 14th day of August, 2023.


/s/ Tamekia R. Goliday
TAMEKIA R. GOLIDAY, MSB #99431
ATTORNEY FOR APPELLEES